Good morning, Your Honours. My name is Bernadette Willeke Connolly, and I represent Pro Bono, the petitioner in this case. I would like to request two minutes of rebuttal time, please. Now this is a case where the government decided to remove a man who by all accounts is a pillar of the community, a devoted husband and father who has continuously lived in this country since 1994. He has four children, two of whom were born in the United States, and four grandchildren. He paid his taxes. He has no criminal record. Well, the equity, whatever the equities are in this case, we can't review. Do you agree? The BIA, there's two, the question is whether the application to reopen was timely. If it was untimely, the BIA's decision not to sua sponte reopen because your client appears to be an admirable person is not something we can review. Do you agree? Yes and no, Your Honour. I agree that the discretionary part of the sua sponte decision is not reviewable by the court, but this court can certainly review the reasons behind the decision. Well, that's good because this takes me to the question I wanted to ask you. You say the IJ made a legal error in saying that your client hadn't established prima facie eligibility for adjustment of status. Yes. Let me assume that you're right. The IJ's, the final paragraph of the IJ's decision says, but even if he had, I would not exercise my discretion to sua sponte reopen because any equity that he obtained, he obtained in the country because he was here illegally. Yes, Your Honour. And I don't think we can review that part of it. So does it matter that he may have made a legal error about adjustment of status? Well, yes, it does matter. And also, I believe that you could review that remark because it's, by the judge, because it's based on a misunderstanding of the law. You understand? Because the equities of people who come and enter illegally, they are here illegally. If what the judge says is true, then the whole immigration system can be abolished because many, many people are here. They get the equities, and now they are punished because they entered illegally and have a good illegal time. Immigration law is also geared towards remedying that. So, for example, if you don't ---- No, not you must. But what I'm saying is, don't look at the fact that those equities were acquired after he entered illegally as the sole reason to deny sua sponte reopening, because if that is the case, then who could, in a litigation context, ever adjust status? Because what you look at when you get waivers, let's just assume you need a waiver of illegal presence because you do consular processing. In those cases, the government looks at the equities. If it said, oh, well, you know, you came and entered illegally, and now, boo-hoo, all of a sudden we can't consider any of the equities because you got them after you came here illegally, then why do we have this waiver system in place? Maybe rather than the equities, is it possible that your client was actually entitled to adjustment of status as a matter of law? And the reason I ask this is because I'm right that his daughter filed an I-130 for him. Isn't that right? Yes, yes. Right. And that permits him, even though he's not here lawfully, to, under certain circumstances, adjust his status. That is correct. Am I also right that he might be grandfathered in because in 1991 and 1992, possibly both years, his employer filed a labor certification? That is correct. And so since this was all done before April 30th, 2001, wouldn't he be entitled to adjustment of status sort of as a matter of law? Exactly. That's what I'm saying. Is that in front of us? I'm sorry. That's not in front of us, though, is it? He's never – we're not reviewing his application for adjustment of status. Oh, no. That was also submitted. There may be an application for adjustment of status out there. There's an I-130 out there. Has the USCIS acted on it? No. He did not. So we're not reviewing anybody's denial of adjustment of status. No. What you are reviewing is a motion to reopen denial. Right. And one of the – there were two bases for the motion. One was the asylum claim, withholding of removal and protection under CAT. Right. The other component was the adjustment of status. So let's assume that – let's assume for a second that he was – that he's entitled to adjustment of status.  Just for purposes of discussion, does that mean that the IJ must sua sponte reopen? It doesn't mean he must sua sponte reopen. Because the IJ says, look, I don't think he is, but even if he is, I'm not going to reopen. Right. He's still entitled to adjustment of status, if you're right. The application may be granted. He may be able to come back from Mexico. Yes, Your Honor. And that's right. And he could deny that, okay? But the denial of the sua sponte must also not be irrational and contrary to the law. And I'm asking you to review this because he based it on a faulty legal premise, which is, you know, I'm denying this, and my reason for this is because you were here illegally. I want you to review the underlying – whether this reasoning behind the denial of the sua sponte is okay or not. I'm not – if he – and you have jurisdiction to do that. Let me ask the other question I had on that point. Yes. The BIA, unlike the IJ, makes no reference at all to the adjustment of status application. And that's a problem. Well, is it a problem? Or it says we agree that he has not established that sua sponte is warranted, and then it goes on to say he hasn't shown an exceptional circumstance warranting sua sponte reopening. But, you know, the problem with this is that, first of all, the BIA said, oh, sua sponte is not a vehicle to circumvent timeliness issues. That was one of the beefs that the BIA had with the sua sponte. And that I'm asking you to review, too, because that is a legally erroneous premise. Because when you – sua sponte is one – one of the purposes of sua sponte is that you can actually get over the timeliness. Sure, you can get your past timeliness, but I guess my question is, is the BIA entitled to consider the extraordinary untimeliness here, 24 years? And a labor application that's been pending for 27 years and saying, you know, this is not the case in which we're going to let you use sua sponte to get around untimeliness. That would be okay if they explained it that way, but they didn't. All they said was it's not a vehicle to circumvent timeliness issues. If they had said, you know, we don't find that there is an exception for the following reasons or we decline to exercise our discretion, then you can't review it. But what you can review is whether the premise of, oh, it's not a timeliness – a vehicle to circumvent timeliness, whether that is legally correct. You know, I would close actually with the words of the – You told me you wanted to save some time. I'm just reminding you. Oh, okay. Yeah. Thank you very much. Good morning. May it please the Court, Aaron Nelson for the Attorney General. I think that this case, Petitioner conflates the two separate analyses that happen in a motion to reopen that is 23 or 24 years untimely. He conflates the changed country conditions hurdle that he has to meet with his eligibility as prima facie eligibility for relief from removal. So focus on the second. Let's assume that the I.J. I was hoping to focus on the first. I know you were hoping to focus on the first because it's your stronger argument. So let's assume that he hasn't shown changed country conditions. And we now get to the analysis of whether the I.J. should sue a sponte reopen. And one of the things he says is you should sue a sponte reopen because I have prima facie eligibility for an I-230, which is to say my daughter's filed the application, it's been approved, and the fact that I entered a long time ago shouldn't matter because somebody once filed a labor application on my behalf. The I.J. says, well, you're really not prima facie eligible because the previous labor application wasn't approved. Is that a correct statement of the law? With respect to the labor certification? Yeah, with respect to his prima facie eligibility for adjustment of status. The question is whether or not it had to be approved or approvable. Well, I think that it had to be approvable, had to be approved, excuse me. However, do you think it has to be approved for him to be eligible for adjustment of status? As your colleague argues it, and she may be right on this, you're eligible for adjustment of status because it was filed and because somebody's now filed an I-230 on your behalf. You may not get adjustment of status, but you're eligible. And the I.J. says, no, you're not even eligible. Now, for the reasons I said before, I'm not sure that matters to his analysis, but isn't he just wrong about that? I mean, I don't think that he's wrong. You know, again, I think that this is subsumed under his, under the issue of what's the standard for an untimely motion to reopen. Well, but we're focusing on the Swiss bonnie side now. In other words, I.J. correctly finds, for purposes of our discussion, this motion is untimely and you haven't shown change country conditions. And Mr. Bautista says, well, maybe you're right, but I've got this application for adjustment of status pending, or my daughter has one on my behalf, and I'm eligible. And so you don't, you know, please reopen so I'm not sent away. And the I.J. says first, no, you're not eligible. If he's wrong about that, is that legal error that requires us to send it back? I don't think whether it's legal error, I don't think that it requires you to send it back because the I.J. also says all of that notwithstanding is a matter of discretion. I wouldn't grant, I wouldn't grant the motion to reopen based on the Swiss bonnie. And now your colleague says, gee, that's a legal error, too, because he bases it on the fact that you waited so long in any equities that you obtained, you obtained during illegal presence in the United States. And she says that's always going to be the case for somebody seeking Swiss bonnie reopening. How do you respond to that? I don't think that that's a legal error to say that I'm exercising my discretion in finding that and weighing the evidence that, for example, the I-130 and the bona fides of the I-130 have been. Well, he says I'm assuming you're prima facie eligible. The last paragraph says I'm assuming you're eligible for the I-130. Even so, I'm not going to exercise my discretion because you've, everything you've, that's something that you got by being here illegally. I mean, isn't that assessment of the facts and the record before him? Yeah. I don't see that as a legal error that needs to be, you know, remanded. Can there be somebody who has an I-130 eligibility who's not here illegally? I-130 eligibility. I mean, I assume that if an American citizen has a parent in Mexico, they can petition for status for them, can't they? Sure, I believe so. And certainly somebody could come on any number of lawful means and have an I-130 filed on their behalf without being in unlawful status. You know, I think that the problem here is that with motions to reopen and the statutory language that was put in place to clamp down on them, if we accept petitioner's argument, it contravenes the spirit, really, and the language of those, of closing and of prizing finality in proceedings. Because this individual was in proceedings in 1992 and came back in 1994. And the premise of, I'm sorry. It seems to me that the only way you could possibly be grandfathered in is if you're, in fact, here illegally. So at least that part of the law is aimed at the people who are here illegally. And the law takes account of people who are in that situation. So I guess I have to wonder a little bit whether or not the claim by the judge that the equities were acquired while he was here illegally sort of does miss the point, because he has to be here illegally in order to be grandfathered. So if we take this to the logical conclusion, which is where I was trying to go, if you'll indulge me, we would have an individual who entered without inspection, entered unlawfully by my count four times since 1986, who went through proceedings in 1992 and was granted voluntary departure, which is a mechanism by which he avoids the most onerous consequences of a what would have then been a deportation order. And the judge doesn't seem to say I'm not going to pay any attention to the equities because there are an equal number of inequities. The judge seems to say I'm not going to take account of the equities because he was here illegally. And I would say that that is within his purview in making a discretionary determination that those don't warrant sua sponte reopening. And if I could just finish my train of thought, perhaps you already know where I'm going. He comes back in 1994, and he has a child who becomes who's an American citizen. And then by the fact of his 24-year unlawful presence, that citizen becomes reaches the age of majority and files the I-130 for him. And now he's asking to erase all of the illegal presence. Let me ask you a question about the I-130. I'm correct in thinking whether or not the I-130 will be approved or not approved is not involved in this case, is it? That goes to the U.S. CIS. Right, right. And they either for us. And it's on a list. He's on a list. And I'll get to some point, they'll either grant it or not grant it, correct? Correct. If they grant it, he can he will have legal status in the country. If the court accepts Petitioner's argument about the untimeliness. No, no. I'm putting aside whether he's removed or not. Right, right. He can be removed and still have an I-130 granted, can he not? I guess he could. And that's somewhere in the bowels of the U.S. CIS, correctly? Correct. Correct. And its denial or approval of that application is not in front of us today. Correct. The only issue is that the IJ at least initially discounted whether or not the pendency of that application provides an equity to Mr. Bautista because the IJ didn't think he was eligible under that application. Is that fair? That's fair. Okay. I just want to make sure what we're reviewing here today because I don't want to look. It may turn out that the IJ is wrong and the U.S. CIS will grant his application. But he still has, well, I think we're sort of butting heads. But that's not the issue in front of us. Right. The issue in front of us is whether we should sui sponte. He should sui sponte reopen. Well, I would say the issue in front of us is whether or not a 24-year untimely motion to reopen can cross the hurdle of changed country conditions such that he's prima facie eligible for any of the relief or sui sponte reopening. And so if you accept Petitioner's argument on the two hurdles, on the untimeliness hurdle and on the prima facie eligibility hurdle, then you basically discount the difference between timely motions and untimely motions and you allow a situation where the hurdle for such lengthy decades untimeliness is much lower. If a reopening is granted, then once it's reopened, then he can submit the I-130 if it's approved at that point, and that sort of flies in the face of finality. That's why I asked you the question. He can submit the I-130 whether or not there's reopening or not, correct? He can, sure, sure. And I think he already has submitted it. Right. Okay. So this has nothing, this case has nothing to do with whether or not the I-130 will be approved or not approved. This case only has to do whether or not he can reopen his order of removal. Correct. Okay. I agree with you. So are the questions of adjustment of status before this Court? I would say they're not before the Court, and I regret that I didn't make a point of Petitioner's failure to exhaust the argument with the board. I don't have the specific site before me, but there's not a fulsome argument presented to the board. There's a line that says he's presumptively eligible for adjustment based on the I-130. I was going to ask you, I asked your colleague about that. The board doesn't mention this issue at all. Is it because they ignored it or because it wasn't raised? I think it's because it wasn't raised. I could. We have the record. I don't want to waste the time looking for it, but I believe in the second or third page of the brief to the board, there is one sentence that says he's eligible based on an approvable I-130, and that's the extent of the argument for that particular issue. A quick question before you sit down, and you are over time. Could his immigration history be a factor in the decision of USCIS to grant or deny the I-130? I don't believe so. Okay. Thank you. Thank you. Ms. Hahn. Yes, Your Honor. The issue of the equities was actually addressed with the VIA. Also, there is already an approved I-130 petition for alien relative, which is in the record. Well, but just so we're clear, approved just means you get in the queue. Right. So what I wanted to tell you on this is, and I'm going to use the words of the late Judge Reinhardt in Margano v. Session. He said, President Trump has claimed that his immigration policy would target bad hombres. The government's decision to remove Margano Ortiz shows that even the good hombres are not safe. Margano Ortiz, by all accounts, is a pillar of his community and a devoted husband and father. It is difficult to see how the government's decision to expel him is consistent with the president's promise of an immigration system with a lot of heart. And then he says, we, as judges, are unable to prevent Margano Ortiz's removal, yet it is contrary to the values of this nation and its legal system. Indeed, the government's decision to remove Margano Ortiz diminishes not only our country, but our court, which are supposedly dedicated to the pursuit of justice. Margano and his family are, in truth, not the only victims. Among the others are judges who are forced to participate in such inhuman acts and suffer a loss of dignity and humanity as well. I concur as a judge, but as a citizen, I do not. That were the words of a fellow judge. And to allow an immigration judge to say, only because you were here illegally and therefore got equities, I see my time is up. You're reading from a concurrence, right? Yes. A separate statement. A separate statement. Notwithstanding what the late Judge Reinhart said in that statement, he agreed that the government had the authority to do what it wanted to do, correct? Yes, I do, Your Honor. I would not – I would not – it's the law. I do agree. But that doesn't mean I do agree that my client in this particular case should not have a chance to apply for adjustment of status. Okay. Thank you. Thank you. Ms. Connolly, we thank you for taking this case on pro bono. Actually, can I ask one question? One other question. Is the question of adjustment of status before this based on the I-130 and the labor certification? Yes. We actually submitted. So basically what we did, Your Honor, is in the motion to reopen. Please stand behind me. Sorry. Sorry. In the motion to reopen, we addressed that he is eligible for adjustment of status and also submitted as required an application for adjustment of status, which is not feed-in. So the adjustment of status. But that was not adjudicated in this case. The adjustment of status application was not adjudicated. It's still out there. It's still out there. It was only put in as one form of relief in the motion to reopen. And in order to get this adjudicated, we need to get the case reopened so that the immigration judge can look at it or the ---- No. See, that's what I keep asking, and that's why I'm not sure you're right. Reopen. You're seeking to reopen in order of removal. That's what you're seeking to reopen. Right. And then ---- Now, finish here. And you have an application pending for adjustment of status. No. And you said to the immigration judge that's one of the reasons you ought to reopen. No. That application remains pending, does it not? Right. But it's not pending, Your Honor. Why? There is no pending application before USCIS. Why? Because of the case. In order to do that, so if there is an exclusion order and not a deportation order, USCIS has a jurisdiction to adjudicate an application for adjustment of status. If it is a deportation case, the matter is different. So in order for us ---- You're saying that the USCIS cannot grant adjustment of status to somebody who's been ordered removed. Yes. And so in a deportation, the only exception is exclusion. So removal ---- So what we have to do is reopen the case, and then either the judge adjudicates it or the judge reopens and terminates, and then we can go to USCIS. Okay. I understand. While the application has not been adjudicated in this case, in order for you to be successful on it, you have to get reopening. Yes. Okay. That is exactly right. Thank you. We thank you for your pro bono efforts. We thank the government for its arguments, and this case will be submitted.
judges: Hawkins, Hurwitz, Eaton